Garo Mardirossian, Esq., SBN 101812
garo@garolaw.com
Lawrence D. Marks, Esq., SBN 153460
Lmarks@garolaw.com
**MARDIROSSIAN & ASSOCIATES, INC.**
6311 Wilshire Boulevard
Los Angeles, California 90048-5001
(323) 653-6311; (323) 651-5511 FAX

Attorneys for Plaintiffs VINCENT VALENZUELA and XIMENA VALENZUELA, by and through their Guardian, PATRICIA GONZALEZ, individually and as successors-in-interest of FERMIN VINCENT VALENZUELA, II, deceased

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT VALENZUELA and XIMENA VALENZUELA, by and through their Guardian, PATRICIA GONZALEZ, individually and as successors-in-interest of FERMIN VINCENT VALENZUELA, II, deceased,<br><br>　　　　Plaintiffs,<br>　vs.<br>CITY OF ANAHEIM; ANAHEIM POLICE DEPARTMENT; RAUL QUEZADA, individually and as Chief of Police; DANIEL WOLFE, WOOJIN JUN, DANIEL GONZALEZ, and DOES 1 through 50, individually and as a peace officers, inclusive,<br><br>　　　　Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>1. **Civil Rights Violations (42 U.S.C. § 1983)**<br>2. **Unlawful Custom, Policy & Practice (42 U.S.C § 1983)**<br>3. **Wrongful Death (Civ. Proc. Code § 377.60(b))**<br><br>**DEMAND FOR JURY TRIAL** |

　　　　COME NOW Plaintiffs VINCENT VALENZUELA and XIMENA VALENZUELA, by and through their Guardian, PATRICIA GONZALEZ, individually and as successors-in-interest of FERMIN VINCENT VALENZUELA, II, deceased, and allege against defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, RAUL QUEZADA, individually and as Chief of Police, DANIEL WOLFE, WOOJIN JUN,

DANIEL GONZALEZ and DOES 1 through 10, individually and as a peace officers, inclusive, as follows:

## JURISDICTION AND VENUE

1. This civil action is brought for the redress of alleged deprivations of constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and 1367.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b), because defendants reside in, and all incidents, events, and occurrences giving rise to this action occurred in, the County of Orange, California.

## PARTIES

3. At all relevant times, decedent, FERMIN VINCENT VALENZUELA, II, ("VINCENT"), was an individual residing in County of Orange, California.

4. At all relevant times, Plaintiffs VINCENT VALENZUELA and XIMENA VALENZUELA by and through their Guardian, PATRICIA GONZALEZ, were and are citizens of the United States, residing in County of Orange, State of California. Plaintiffs are the children of decedent, VINCENT, and were dependent upon decedent at the time of decedent's death for the necessaries of life, including but not limited to support that aided plaintiffs in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without.

5. At all times herein mentioned, defendant CITY OF ANAHEIM was and is a public entity duly organized and existing as such under the laws of and in the State of California.

6. Defendant ANAHEIM POLICE DEPARTMENT is an agency of Defendant CITY OF ANAHEIM and Defendant CITY OF ANAHEIM is a "person" subject to suit within the meaning of 42 U.S.C. § 1983 under *Monell v. Dept. of Social Services*, (1978) 436 U.S. 658, 691. Under California Government Code § 815.2(a), Defendant CITY OF

ANAHEIM is liable for any and all wrongful acts hereinafter complained of committed by any of the individual officer defendants.

7. Defendant RAUL QUEZADA is the Police Chief of the ANAHEIM POLICE DEPARTMENT, an agency of the CITY OF ANAHEIM. Plaintiffs are informed and believe and based thereon allege that defendant RAUL QUEZADA is responsible for implementing, maintaining, sanctioning, or condoning policies, customs and/or practices under which other defendants committed the illegal or wrongful acts hereinafter complained of. By reason of these policies, practices and/or customs, defendant RAUL QUEZADA is liable for the damages hereinafter complained of. Plaintiffs sue defendant RAUL QUEZADA in both his official and personal capacity.

8. Plaintiffs are informed and believe and on that basis allege that defendant DANIEL WOLFE was, at all relevant times, a resident of the County of Orange, State of California; and was, at all relevant times, an employee, acting within his course and scope of his employment with ANAHEIM POLICE DEPARTMENT, an agency of the CITY OF ANAHEIM.

9. Plaintiffs are informed and believe and on that basis allege that defendant WOOJIN JUN was, at all relevant times, a resident of the County of Orange, State of California; and was, at all relevant times, an employee, acting within his course and scope of his employment with ANAHEIM POLICE DEPARTMENT, an agency of the CITY OF ANAHEIM.

10. Plaintiffs are informed and believe and on that basis allege that defendant DANIEL GONZALEZ was, at all relevant times, a resident of the County of Orange, State of California; and was, at all relevant times, an employee, acting within his course and scope of his employment with ANAHEIM POLICE DEPARTMENT, an agency of the CITY OF ANAHEIM.

11. Plaintiffs are informed and believe and thereon allege that each of the defendants designated as a DOE is intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused

injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to plaintiffs who therefore sue said defendants by such fictitious names, and plaintiffs will seek leave to amend this complaint to show their true names and capacities when the same are ascertained.

12. At all times herein mentioned, DOES 1 through 20, inclusive, were and now are, each duly appointed peace officers and ranking officers and employees of defendants ANAHEIM POLICE DEPARTMENT and CITY OF ANAHEIM, qualified and acting under color of state law, and as the employee, agent and representative of every other defendant.

13. At all times herein mentioned, each and every defendant herein had the legal duty to oversee and supervise the hiring, conduct, employment and discipline of each and every other defendant herein.

14. Defendants, and each of them, did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated well established and settled law.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

15. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 14 of this Complaint, and by this reference incorporates the same herein and makes each a part hereof.

16. The incidents complained of occurred near the intersection of Broadway and Magnolia Avenue in the City of Anaheim, State of California. The incident was recorded on video and audio.

17. On July 2, 2016 at approximately 9:15 a.m. Plaintiffs' father, VINCENT, a resident of the City of Anaheim, was encountered by defendants DANIEL WOLFE, WOOJIN JUN, DANIEL GONZALEZ, ANAHEIM POLICE DEPARTMENT and DOES 1-10.

18. On information and belief, VINCENT had not committed any crime. Defendants had neither reasonable suspicion to detain him, nor probable cause to arrest him.

On information and belief, Defendants had no information that VINCENT had committed a felony.

19. At all relevant times, VINCENT was unarmed and posed no imminent threat of death or serious physical injury to defendants, nor to any other person.

20. On July 2, 2016, Defendant WOLFE never saw VINCENT holding a weapon.

21. On July 2, 2016, Defendant JUN never saw VINCENT holding a weapon.

22. On July 2, 2016, Defendant GONZALEZ never saw VINCENT holding a weapon.

23. On information and belief, at all times material hereto, defendants WOLFE, JUN, GONZALEZ and DOES 1-10 believed that VINCENT was mentally ill and was homeless. Despite their belief as well as their awareness that its police officers had daily encounters with the mentally ill and homeless population in its city, the defendants failed to obtain, provide and utilize resources available to it in order to properly train its police officers, including the individual defendant officers, on how to deal with persons who are believed to be homeless and with mental illness during encounters with police.

24. Defendants DANIEL WOLFE, WOOJIN JUN, DANIEL GONZALEZ and DOES 1-10, inclusive, under color of authority, used excessive force upon VINCENT with their batons, hands, elbows, fists, knees and a Taser gun. Defendants also deployed their Taser guns, several times, at VINCENT – striking him several times. Defendants WOLFE and JUN also used a carotid artery technique to restrain VINCENT. Defendant GONZALEZ gained and maintained control of VINCENT's right arm while Defendant JUN gained and maintained control of VINCENT's left arm and Defendant WOLFE held VINCENT by the neck, applying the carotid artery technique. Even though the officers outnumbered VINCENT, even though the officers and had control of both of his arms, even though the officers had far less harmful means of subduing VINCENT at their disposal, even though Defendants WOLFE and JUN knew the carotid artery technique was restricting air and/or blood from passing through VINCENT's neck, and even though Defendants

WOLFE and JUN knew the carotid artery technique carries with it the risk of severe injury or death, Defendant WOLFE used and continued to use the carotid artery technique until VINCENT was dead from asphyxiation and even thereafter.

25. Defendant SERGEANT DANIEL GONZALEZ oversaw, supervised and approved Defendants WOLFE and JUN's use of force. Specifically, Defendant GONZALEZ gained and maintained control of VINCENT's right arm while Defendant JUN gained and maintained control of VINCENT's left arm and Defendant WOLFE held VINCENT by the neck, applying the carotid artery technique. Even though the officers outnumbered VINCENT, even though the officers and had control of both of his arms, even though the officers had far less harmful means of subduing VINCENT at their disposal, even though Defendant GONZALEZ knew the carotid artery technique was restricting air and/or blood from passing through VINCENT's neck, and even though Defendant GONZALEZ knew the carotid artery technique carries with it the risk of severe injury or death, Defendant GONZALEZ advised Defendant WOLFE to use and to continue to use the carotid artery technique until VINCENT was dead from asphyxiation and even thereafter. During this time Defendant GONZALEZ gave Defendant WOLFE instruction on how to properly administer the carotid artery technique, so as to more certainly asphyxiate VINCENT. Through the foregoing actions, Defendant GONZALEZ directed his subordinate(s) in the acts that deprived VINCENT of his rights; Defendant GONZALEZ set in motion a series of acts by his subordinate(s) that he knew or reasonably should have known would cause the subordinate(s) to deprive VINCENT of his rights and Defendant GONZALEZ knew, or reasonably should have known, that his subordinate(s) were engaging in these acts and Defendant GONZALEZ failed to act to prevent the subordinate(s)'s actions.

26. Even though VINCENT could have been restrained with the use of less than lethal control holds and handcuffs, the defendants WOLFE, JUN, GONZALEZ and DOES 1-10, inclusive, used or authorized the use of deadly force by using the carotid artery

technique to restrain VINCENT, while they outnumbered him and had both his left and right arms under control. Defendants WOLFE, JUN also beat VINCENT with their batons, hands, elbows, fists, knees and a Taser gun to restrain VINCENT.

27. As a direct result of the physical altercation with defendants WOLFE, JUN and GONZALEZ alleged herein, VINCENT died.

28. Defendants' actions caused VINCENT to lose his life, and Plaintiffs to lose their father.

29. VINCENT did not die immediately, but he was in respiratory distress when paramedics transported him to West Anaheim Medical Center for medical treatment, where he remained hospitalized until his death on July 10, 2016.

30. The search and seizure and the use of deadly force was excessive and objectively unreasonable under the circumstances. Given that VINCENT had not committed a crime. The use of deadly force by defendants WOLFE, JUN, GONZALEZ and DOES 1-10 demonstrated a deliberate indifference to the health and safety of VINCENT that shocks the conscience.

31. In doing the acts and omissions alleged in this Complaint, Defendants pursued an unprivileged course of extreme and outrageous conduct directed at VINCENT with the intent to cause VINCENT to suffer extreme terror, fear, shock, anxiety, mental anguish, despair and emotional distress. Defendants' actions shock the conscience.

32. Defendants WOLFE, JUN, and GONZALEZ and DOES 1-10, were present at the scene and intentionally and knowingly permitted the unprovoked and unjustified killing of VINCENT by failing to prevent it when circumstances were such that they could.

33. Defendants WOLFE, JUN, GONZALEZ and DOES 1-10, inclusive, then conspired among themselves to justify their bad faith excessive use of force and hide the true cause of VINCENT's death.

34. These acts of defendants constituted excessive and deadly force which caused plaintiffs special and general damages, physical injuries and extreme emotional distress.

Further the acts of defendants WOLFE, JUN, GONZALEZ and DOES 1-10, individually and as a peace officer, inclusive, deprived plaintiffs and VINCENT of rights secured to them by the First, Fourth, and Fourteenth Amendments to the United States Constitution in that defendants deprived VINCENT of his right to be free in his person against unreasonable search and seizure, his right to be free from infliction of cruel and unusual punishment, and his right not to be deprived of life, liberty and property without due process of law.

35. At all times herein mentioned defendants were acting under the color of one or more statutes, laws, regulations, customs, practices and usages of the State of California, County of Orange, the City of Anaheim, and the Anaheim Police Department.

36. The aforesaid acts and omissions of defendants were done knowingly, intentionally and for the purpose of depriving plaintiffs and VINCENT of their constitutional rights in reckless and callous disregard of the same, and by reason thereof, plaintiffs claim exemplary and punitive damages against each individual defendant (and not against defendants CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT) in an amount according to proof.

## FIRST CLAIM FOR RELIEF

(Substantive Due Process – 42 U.S.C. § 1983)

[Against defendants DANIEL WOLFE, WOOJIN JUN, DANIEL GONZALEZ and DOES 1 through 10, individually and as peace officer, inclusive]

37. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 36 of this Complaint, and by this reference incorporates the same herein and makes each a part hereof.

38. All actions alleged in this Complaint undertaken by Defendant WOLFE were undertaken under color of state law.

39. All actions alleged in this Complaint undertaken by Defendant JUN were undertaken under color of state law.

40. All actions alleged in this Complaint undertaken by Defendant GONZALEZ were undertaken under color of state law

41. VINCENT and Plaintiffs had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference in plaintiffs' familiar relationship with their father, VINCENT.

42. Plaintiffs were dependent upon their father, VINCENT at the time of decedent's death for the necessaries of life, including but not limited to support that aided plaintiffs in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without.

43. VINCENT had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution to be free from state actions that deprive him of his right to life, liberty, or property in such a manner as to shock the conscience.

44. As a direct and legal result of the unreasonable search and seizure and excessive force by defendants WOLFE, JUN, GONZALEZ, and DOES 1-10, and failure to intervene, VINCENT died. Plaintiffs were thereby deprived of their constitutional right of familiar relationship with their father, VINCENT.

45. Defendant GONZALEZ directed Defendants WOLFE and JUN in the acts that deprived VINCENT and Plaintiff of their rights. Defendant GONZALEZ failed to act to prevent defendants WOLFE and JUN from committing acts that deprived VINCENT and Plaintiffs of their rights. Defendant GONZALEZ set in motion a series of acts by Defendants WOLFE and JUN that he know or reasonably should have known would cause defendants WOLFE and JUN to deprive VINCENT and Plaintiff of their rights.

46. Defendants WOLFE, JUN, GONZALEZ, and DOES 1-10, individually and as peace officer, inclusive, acting under color of state law, thus violated the Fourteenth

COMPLAINT

Amendment right of plaintiffs to be free from unwarranted interference with the familiar relationship with VINCENT.

47. The above described actions of defendants WOLFE, JUN, GONZALEZ, and DOES 1-10, individually and as peace officer, inclusive, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of plaintiffs and VINCENT, and with purpose to harm unrelated to and unjustified by any legitimate law enforcement objective.

48. As a direct result and legal result of the acts of defendants WOLFE, JUN, GONZALEZ and DOES 1-10, individually and as peace officer, inclusive, plaintiffs have suffered extreme and severe mental anguish and pain and has been injured in mind and body, and has also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of VINCENT, and will continue to be so deprived for the remainder of his natural life. Plaintiffs are also claiming funeral and burial expenses and a loss of financial support.

49. The conduct of defendants WOLFE, JUN, GONZALEZ, and DOES 1-10, individually and as peace officer, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of plaintiffs and VINCENT, and therefore warrants the imposition of exemplary and punitive damages.

## SECOND CLAIM FOR RELIEF

(Unlawful Custom, Policy & Practice – 42 U.S.C. § 1983)

[Against defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, RAUL QUEZADA, individually and as Police Chief, and DOES 11 through 20, individually and as peace officer, inclusive]

50. Plaintiffs refer to and replead each and every allegation contained in paragraphs 1 through 49 of this complaint, and by this reference incorporates the same herein and makes each a part hereof.

51. Plaintiffs are informed and believe and thereon allege that on or about July 2, 2016, and for at least five years prior thereto, defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, Police Chief RAUL QUEZADA, and DOES 11-20, and each of them, established, maintained, enforced and applied a custom, policy and practice of using and permitting the use of unnecessary, unreasonable and deadly force by:

    a. Condoning a peace officer code of silence throughout the Department;

    b. Failing to discipline officers who engage in the use of unnecessary or excessive force:

    c. Failing to adequately supervise and control officers known, or who reasonably should have been known, to have used unnecessary or excessive force; and

    d. Training officers for the CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT in a manner which promotes attitudes and behavior among the administration and rank and file inconsistent with a civilian police force,

Thereby proximately causing injuries to members of the public, including plaintiff in violation of the First, Fourth, Fifth and Fourteenth Amendments of the Constitution.

52. The carotid artery restraint technique has been banned by police departments around the country because it poses a high and unpredictable risk of serious injury or death. Chokeholds are intended to bring a subject under control by causing pain and rendering him unconscious. Depending on the position of the officer's arm and the force applied, the victim's voluntary or involuntary reaction, and his state of health, an officer may inadvertently crush the victim's larynx, trachea, or thyroid. The result may be death caused by either cardiac arrest or asphyxiation. Following a well publicized series of choking deaths, the Los Angeles Police Department restricted use of the carotid artery restraint technique in 1980 and the New York Police Department banned it in 1993.

53. Pursuant to section 300.3.4, of the Anaheim Police Department Policy Manual, Defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT Chief of Police

RAUL QUEZADA, and DOES 11-20, ANAHEIM POLICE DEPARTMENT officers are permitted to use the carotid artery restraint technique.

54. Defendant WOLFE's use of the carotid artery restraint technique was consistent with ANAHEIM POLICE DEPARMENT policy.

55. Defendant WOLFE's use of the carotid artery restraint technique was inconsistent with ANAHEIM POLICE DEPARMENT policy.

56. As a direct and legal result of the use of the carotid artery restraint technique VINCENT died.

57. Plaintiffs are informed and believe and thereon allege that at the time of the incidents alleged above and prior thereto, the CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, Police Chief RAUL QUEZADA, and DOES 11 through 20, and other supervisory officers of the CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT, as yet unknown to plaintiff, knew or should have known that Defendants WOLFE, JUN, GONZALEZ DOES 1 through 10, inclusive, and each of them would use excessive or deadly force, and failed to properly train, supervise, investigate, regulate or discipline them. These failures and the aforementioned practices, policies and customs were and are the proximate cause of the death to decedent VINCENT and the injuries suffered by plaintiffs.

58. Plaintiffs are informed and believe and thereon allege that at the time of the incident alleged above, prior and subsequent thereto, the ANAHEIM POLICE DEPARTMENT had (A) inadequate use of force guidelines on the use of deadly force; and (B) the training and supervision of police officers in the use of force and deadly force by the ANAHEIM POLICE DEPARTMENT was and is grossly inadequate. These failures were and are the proximate cause of death to decedent VINCENT and the injuries suffered by plaintiffs.

59. Plaintiffs are informed and believe and thereon allege that prior to the incident alleged above, the Defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT Chief of Police RAUL QUEZADA, and DOES 11-20, knew from, among

other things, the "Kelly Thomas" incident, that its police officer training and polices regarding the use of force to detain and arrest unarmed suspects was inadequate and led to constitutional injury, physical injury and death.

60. The aforesaid acts and omissions of defendants were done knowingly, intentionally and for the purpose of depriving decedent VINCENT and plaintiffs of their constitutional rights.

61. By reason of the aforesaid acts and omissions of defendants, plaintiffs were required to and did retain an attorney to institute and prosecute the within action and to render legal assistance to plaintiff in order that he may vindicate the loss and impairment of rights and by reason thereof, plaintiff requests payment by defendants of wrongful death damages and a reasonable sum for attorneys fees.

### THIRD CLAIM FOR RELIEF

(Wrongful Death – Civ. Proc. Code § 377.60(b))

[Against CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, RAUL QUEZADA, individually and as Chief of Police, DANIEL WOLFE, WOOJIN JUN, DANIEL GONZALEZ and DOES 1 through 20, individually and as a peace officer]

62. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 61 of this Complaint, and by this reference incorporates the same herein and makes each a part hereof.

63. On July 19, 2016, plaintiffs presented to defendants CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT a Government Claim based on the acts, omissions, damages and injuries herein complained of. Defendants CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT failed to act on the claim within the period of 45 days after its presentation. In that defendants CITY OF ANAHEIM and ANAHEIM POLICE DEPARTMENT never responded to this Claim, this complaint is timely.

64. Plaintiff s bring this action for wrongful death pursuant to the provisions of Code of Civil Procedure § 377.60(b) in that, at the time of decedent VINCENT's death,

plaintiffs were dependent upon decedent for the necessaries of life, including but not limited to support that aided plaintiffs in obtaining the things, such as shelter, clothing, food and medical treatment, which one cannot and should not do without.

65. At or about the aforementioned time, date and place, defendants WOLFE, JUN, GONZALEZ, and DOES 1-10, individually and as a peace officer, intentionally, negligently and recklessly killed VINCENT thereby depriving decedent of his life without due process of law in violation of his Constitutional rights under the First, Fourth and Fourteenth Amendments and the Constitution of the State of California.

66. On and for some time before July 2, 2016, defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, RAUL QUEZADA, individually and as Chief of Police, and DOES 11 through 20, individually and as a peace officer, inclusive, and each of them, negligently and carelessly employed, retained, trained, supervised, assigned, controlled and negligently and carelessly failed to adequately discipline Defendants WOLFE, JUN, GONZALEZ, and DOES 1 through 10, individually and as a peace officer, inclusive, who defendants CITY OF ANAHEIM, ANAHEIM POLICE DEPARTMENT, RAUL QUEZADA, individually and as Chief of Police, and DOES 11 through 20, individually and as a peace officer, inclusive, and each of them, at all times material herein knew or reasonably should have known had dangerous and dishonest propensities for abusing their authority and for using excessive and punitive force and violence and for falsifying their accounts and reports of their actions, especially where force was used by said defendants.

67. By reason of the aforesaid acts and omissions of defendants, plaintiffs have been and will forever be deprived of the love, affection, society, companionship, support and pecuniary benefits of decedent, all to plaintiffs' damages according to proof at trial.

68. As a further proximate result of the aforesaid acts and omissions by defendants and the death of decedent, plaintiffs have incurred funeral and burial expenses in an amount to be proven at trial.

## PRAYER FOR RELIEF

Plaintiffs pray for judgment on all causes of action against defendants, and each of them, as follows:

1. For general damages in a sum according to proof;
2. For special damages according to proof;
3. For interest on all economic damages in the legal amount from July 2, 2016 to the date of judgment;
4. For punitive damages and treble damages as provided by law against each individual defendant;
5. For attorney's fees pursuant to 42 U.S.C. § 1988;
6. For costs of suit incurred herein; and
7. For such other and further relief as the court may deem proper.

Dated: November 29, 2017          **MARDIROSSIAN & ASSOCIATES, INC.**

By: _____
Garo Mardirossian, Esq.
Lawrence D. Marks, Esq.
*Attorneys for Plaintiffs*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this action pursuant to F.R.C.P. 38 and the Seventh Amendment of the Constitution.

Dated: November 29, 2017          **MARDIROSSIAN & ASSOCIATES, INC.**

By: _____
Garo Mardirossian, Esq.
Lawrence D. Marks, Esq.
*Attorneys for Plaintiffs*